Next we'll hear 1914-98 Selective Insurance v. Westfield Insurance. Counsel, whenever you're ready. Thank you, Your Honor. May it please the Court, Matt Abey of Nelson Mullins, here on behalf of Selective Insurance Company. Your Honors, before you is an insurance coverage action that arises out of a breach of contract action against a general contractor seeking to enforce a construction performance bond and demanding economic damages. There is no legal relief for property damage that is sought in the underlying action. Today, I plan to address three main issues. One, the District Court's application of North Carolina's comparison test was overbroad, forcing Selective to provide coverage to a stranger to the policy. Second, the District Court compounded this error by refusing summary judgment on the against Selective. And third, this Court has jurisdiction over both claims. For these reasons, Selective asks that the Court reverse and remand with instructions that the claims against Selective be dismissed. I'd like to start where we must with the Court's jurisdiction, especially given the Court's order last Friday. The Court does have jurisdiction, not here over a final order. We're not here under 1291. We are here under 1292A1. The parties have not disputed that the Court has jurisdiction. I get that's not dispositive. What did the District Court order Selective to do anything while the case is pending? While the underlying case is pending? Yes. During this litigation, did the District Court order Selective to do something while this case continues? Yes, it required prospective defense of the general contractor in the underlying case. Where is that? So that is in the District, that is in the Court's order. If I may, let me look first to even the appellees agree and interpret the District Court's order as requiring Selective. They use that word requiring Selective to fulfill its defense obligations. That's in their brief at 22. Right. I guess, you know, the Court said Selective had forfeited the right to control the defense by not defending initially and then said, you know, Selective was required to defend and we're going to later in this litigation, we're going to calculate how much Selective owes as damages because it didn't defend when it should have. And that's a little different than these cases where a Court, as a matter of an injunction says, I'm ordering this insurer to pay prospectively for the defense as going forward and they can be held in contempt if they don't. It seemed to be different than what the District Court was doing here. Well, so we look to the practical effect of the Court's order and that's where we're getting that from the USA Gymnastics case, the Seventh Circuit. We're also getting that from Romero, which we cited in the brief, in the jurisdictional section of our brief. We don't necessarily look at the labels that the District Court puts on it. We look at the practical effect and here the practical effect is the underlying case was ongoing. So by saying that Selective had a duty to defend, it had to step in as the appellee's claim, step in on a primary and non-contributory basis and take over the full defense. Now the question that you raised about the forfeiture or the waiver of the right to object to certain monetary amounts or something like that in controlling the defense, that's a separate issue. The District Court, though, said you have a duty of defense and the practical effect of that is Selective has to step in and start defending that action. Well, what is the status presently of the underlying action? The underlying action has been dismissed and that was dismissed after the appeal was filed and everything briefed. So how is the duty to defend issue that you brought up on appeal still before us when the underlying action has been dismissed? Well, because at the time that we filed the appeal, we had that prospective obligation. Right, but we have to have present jurisdiction. We have to have a live case in front of us on the duty to defend, don't we? Because that is the substance of your appeal. That's correct, Your Honor. Although the underlying claims have been dismissed against the general contractor and some of the other parties, there are some other subcontractors that still have not resolved claims. So I think that the bankruptcy court entered an administrative closure of the case, but there still hasn't been dismissals with prejudice against all parties filed. So there still is technically... But with regard to the parties before the court, you're saying what is still left? What I'm trying to understand is once the duty to defend is effectively out of the case, what do we have to decide here? In other words, if the action has been dismissed, it seems to me the issue of the duty to defend doesn't... It's gone. There weren't damages assessed as a result of failure to timely defend, so as Judge Rushing said, so we don't have that in front of us, the quantum of damages. So what's here? Because the judge also ordered as part of that duty of defense, you have backwards-looking duty of defense obligations, and that's just a monetary payment, but you also have the forward-looking. And at the time of the court's order, which would have been in April of 2019, there was still a duty of defense. And that case, as I said, the underlying case, although the majority of the claims have been dismissed, there is still a live controversy there and a duty of defense that's ongoing, including a payment obligation that is still there. So what we're asking the court to do is to rule that the court below erred in finding that there was a duty to defend, and that's still a live controversy that the court can resolve. Why are you looking to Romero in the Third Circuit when we have a case in Lutz where they lay out what we're to look at to decide if it's fine or below? Because we're not appealing this as a final order. So we're not appealing under 1291. The closest analog, I might say, would be that Pen America versus MAP case, which would have been 2008. But Pen American versus MAP doesn't apply here because that, again, was under 1291 and not 1292A1 as a mandatory injunction. And in MAP, there was already a defense that was being provided by the insurer. Here, we have denied coverage and did not provide a defense. And so the district court was forcing us into a position and forcing us to provide a defense to a stranger to the policy and enforcing that obligation brought by an even further stranger to the policy in the two insurers of that party, the general contractor claiming additional insured status. So we're even one more moved than MAP. And that's why under 1292, the court has jurisdiction. But if I may, judges, I want to turn to the duty of defense and why the district court got that wrong. The district court just applied an overbroad reading of the comparison test under North Carolina law. So as the court and the Court of Appeals of North Carolina and CUBIT has explained, the North Carolina Supreme Court changed the comparison test. It made a change of the law in the Harleysville versus Buzz Off case. Harleysville versus Buzz Off was a Lanham Act case that dealt with whether or not there were some advertising injuries and that fell under a CGL policy. And the Supreme Court was looking at the plaintiff was alleging that there was a violation or that the advertisements were problematic because it was discussing its own product versus a competitor's product. And so the court looked at essentially the essence of the underlying claim. It didn't look at the labels that were applied. It didn't look at just the broad allegations in a sense that we would to see just if we could find one little sliver of, in this case, property damage and instead look to the essence, to the gravamen of the plaintiff's claim. And here, the gravamen of the plaintiff's claim was non-economic damages. They were suing to try and implicate travelers construction performance bond. That's what the damages were throughout the complaint. What about the first supplemental complaint? Well, I don't know that the court should have looked at the first review, the back court's decision to docket a supplemental complaint. Well, it's not necessarily the docketing of supplemental complaint. It's the claims that were alleged and the claims that were alleged were for non-economic damages. The supplemental complaint, even if the court did look at it, really just said that we need some more investigation. These are some issues that we need to look into and figure out if they need to be corrected. Did you object though to the district court's consideration of the supplemental complaint? We said that the district court didn't need to look at the supplemental complaint, that the operative complaint was the first amended complaint. Did you ever tell the district court that it couldn't do that, that it would be error to do that? I don't know that we said that it would be error to do that, but we did say that the court should look to the operative complaint, which is the first amended complaint. But Judge Keenan, even if you look at that supplemental complaint, it doesn't change the allegations. It doesn't change the claims that are brought. The complaint was asserting a claim for breach of contract. And the breach of contract claim was essentially to look for economic damages related to the quality of the work. There's no property damage that results from the quality of the work. The two allegations that the appellees want to rely on are in paragraph 150L and then 150E, when you talk about materially and substantively breaching the construction contract by, among other things, failing to properly construct the project buildings in a manner preventing water intrusion, which is causing damage and the potential for significant mold problems in the residential units as well as the common areas. That allegation though, again, is under the breach of contract claim. And one thing that we agree with, my colleagues on the other side in their brief on page 26, is that we have to review the complaint in context. Well, the context of that allegation is about water intrusion caused by the building envelope, not water intrusion caused by any plumbing issues. And again, because we have an AI endorsement here, we have to look to plumbing allegations, not to allegations that there were water intrusion from some other subcontractor or some other issue that was out there. What about the allegations about waste plumbing deficiencies? Yes, so that is in Barber's expert report and the catalog of issues that's in the supplemental complaint. But again, it says that those need to be investigated and corrected. It does not talk about that there are damages to the property and we need economic or we need legal damages to compensate for that property damage. Carolina just required that you're the insurers on notice that the work, that your insured's work is at issue and it's causing damage? I don't think so. Not after Harleysville. Not after the Supreme Court's opinion in Harleysville versus Buzz Off. I think it's narrowed the test and it looks to the gravamen of the complaint. What do you think Harleysville did other than maybe get rid of mere possibility? They didn't mention mere possibility, but do you think they did something bigger than that? I do. And I think that you look to the essence of the claim. You look to the gravamen of the complaint. Where do they say that? They said that on, they cite in the waste management case, I believe it was at 64. Your Honor, if you'll give me a second, I can get you a page. It was at page seven of the North Carolina Reporter on page 611 of the Southeast Second Reporter. And judging in that section, it talks about looking to stripping the complaint. The quote is, we now strip to its essentials the amended complaint to ascertain the gravamen of the plaintiff's claim. So we're not looking to whether or not we can isolate one particular line about we may need to investigate future issues. We look to the essence of the claim. And the essence of the claim here is for economic damages. The general contractor was trying to implicate, or the developer was trying to implicate the general contractor's performance bond. And they were trying to seek economic damages from that. Um, judges, we did also raise the summary judgment issue that the court aired in refusing summary judgment on the unfair trade practices claim. That's intertwined with our claim that there's no coverage here. I'd rest on our brief for that argument unless the court has any questions. But based on the issue that the trial court applied an overbroad reading of North we'd ask that the court reverse. We'll hear from Appalese. Good morning, your honors. Morgan Templeton on behalf of the insurer Appalese. I'd like to first start off with the merit side and then I'll address the procedural issue on the back end. The court should affirm the district court in all respects is clear that Weaver Cook was an insurer on the selective policy that was issued to DD Plumbings. And as Judge Rushing pointed out, there's implications in the amended complaint that the raw sewage was entering that building through the plumbing and affecting the interior trim of the building. That is property damage that is caused by an occurrence and is covered under a CGL policy. The underlying complaint is than a breach of contract claim. It is a negligence claim, a construction defect claim surrounding the water intrusion allegations at the building. It is clear that North Carolina law treats the duty to defend separately from the duty to indemnify. The duty to defend is a much broader concept and all questions go to the favor of the insured. They do not go to the selective. It is an interpretation between the waste management case, the buzz off case, and tangentially the cubit case that followed about a year after the buzz off case. Nowhere in those opinions, in the subsequent two opinions, is waste management overruled, vacated, or otherwise noted as restricting the interpretation of the duty to defend. It is intended to be broad for the benefit of the policyholder. I would direct the court to the language in waste management that says, where the insurer knows or could reasonably ascertain facts that if proven would be covered by the policy, the duty to defend is not dismissed because the facts alleged in the third party complaint appear to be outside the coverage or within a policy exception to coverage. That is at page 377 of the opinion. That very language is subsequently cited in the cubit case. So the intermediate court of appeals in North Carolina clearly thinks that waste management is still good law and we submit that it is. Of course, the lower court went to great lengths to discuss the property damage and to find that there was coverage and a duty to defend. To address Judge Keenan's question, the case is not moot. Both Westfield and Zurich sought retrospective damages and they also sought prospective damages. From the date of the district court's order in April of 2019, there was an ongoing duty to defend throughout the life of that case. Right, but damages haven't been assessed. I wasn't suggesting that it was moot, but I'm just saying that there is perhaps nothing substantive in this appeal for us to grapple with because an assessment of damages has not been made. Yes and no, Your Honor. As far as the insurer appellees, within the motion for summary judgment, there were affidavits submitted setting forth both what Zurich incurred and what Westfield incurred as retrospective damages. The motion itself sought that relief and the motion for summary judgment filed by the insurer appellees was granted in all parts. So, I would submit that there was a finding of damages in addressing that issue. Also, I would point what Judge Rushing raised. Excuse me, I didn't mean to interrupt, but I want to make sure I understand. So, you're saying that the court ordered a specific amount of damages because I didn't see that? I don't think that the court listed out the monetary numbers that were contained in the motion for summary judgment, but the order of the court at the end specifically said the motion is granted and the evidence was there. So, if this court sent it affirmed and went back, it's just merely asking the district court, here, you granted it, here's the damages that were uncontested, and then discussing whatever... Okay, but we're here on the interlocutory order of whether there was a duty to defend. Sure. Not the court's assessment of any or determination of damages owed, right? Certainly. That is correct. And then the point I wanted to address with Judge Rushing on the prospective relief, which sort of dovetails into the 1292 analysis, within that same memorandum of support, which I think you'll find at docket entry 71, which was the memorandum in support, in that paper, they specifically sought relief for the duty to defend ongoing. And so, again, that was... But the court didn't order that. I take your point that the court said it granted your motion and didn't parse it, but the court didn't also say, and I'm ordering selective, to begin defending this and pay, you know, forward-looking. The court actually entered an order staying the damages question. Only as to... As I read the order, it stays the action as it relates to damages that were being brought separate and apart by Weaver Cook, which brought the unfair trade practice claim and their bad faith claims, which the court was not going to address. Just as a factual matter, did selective take over the defense and start paying out? Your Honor, they did not, which I suspect would be something... Could you have moved for contempt or would you have needed an additional order from the district court? So, walking you through the timeline on that, April of 19, the order is entered within 20, I think it was 28 days or 29 days after the appeal was filed. And rightly or wrongly, out of deference to this court, once the appeal was filed and the court had said, the district court said it was stayed, I felt it would have been inappropriate to do something below. Yeah, I don't want to call into... I'm not calling into question your judgment. I'm just wondering, you know, there are cases where this has been, an order has been injunctive and so an appeal could be taken, but those all read very differently. You know, they have the court actually ordering, you know, as of this date, the insurer must begin, you know, under threat of contempt to pay. And that, I was just curious if that seemed to be the understanding of the parties here or not. Certainly, there's no language in there talking about the threat of contempt or anything like that. I certainly concede that point. Switching gears quickly to the duty to defend and this notion that the pleading itself was somehow deficient. I would point the that pleading was filed with permission of the court. It was accepted by the court. Selective could have come in and defended that action at some point and moved to dismiss the complaint if they thought it was defective under Rule 7. They didn't. They could have come in and moved for 12B6. But that, to me, even if you accept it as the premise that they should have done something, they didn't. And they had notice of that George Barber report and the allegations that were being made as to the raw sewage. And if we look to waste management, if they know, which they admit they received the tender letter, they admit they received the pleading, they're on notice at that point. And if we look to the quote that I read to your honors moments ago, if they know of this information, they're duty bound to step in and defend. Insurance companies defend frivolous, fraudulent claims all day long. And that's a low bar. And that's the whole purpose. Come in and defend. Lastly, I know I'm running out of time. I do want to say the practical effect of this order, in our view, was tantamount to a complete and final decision as it relates to the duty to defend. These parties have been in litigation for many, many years and don't think there's anything more for the district court to do vis-a-vis the merits of the duty to defend. And we think, as I've explained, I believe that it is triggered. I recognize it's a de novo review, but at least two judges below have weighed in on various orders saying that they view it as having an allegation of property damage caused by the occurrence and these folks should have defended. With that said, I'm happy to answer any other questions the court may have. Thank you. We would ask that you affirm in all respects. Thank you. Good morning, your honors. Mike Medford from Raleigh, North Carolina for the Applee-Weaver Cook construction. The court's already heard a lot about the issues on both sides of this, and I'm not going to take up the court's time with a whole lot of extra stuff. I would note that to the extent that Selective argues that the Buzoff case, also called the Harleysville case, changed the law in North Carolina, the Cubitt case, it's also signed by Selective, talks about it changes it, but then later in the opinion it said it didn't change the part that talks about the scope of materials that should be considered in determining the duty to defend. Since the Harleysville Buzoff case, the appellate courts in North Carolina and the federal district courts in North Carolina, in cases cited in our brief, have continued to apply the broad North Carolina rule about what you look to, and the North Carolina Court of Appeals. Although our Supreme Court has used the word complaint in Harleysville, the court clearly did not intend to limit our review to the actual, in this case, third-party complaint, and thereby overrule plenary precedent. In Harleysville, it appears that complaint refused to mean a factual basis supporting the relevant third-party claim, i.e. the pleadings, depositions, answers to interrogatories, and other documents that were properly before the trial court on summary judgment. So, and there are plenty of references in the cases that say, well, if it's not clearly alleged, if it's not alleged in the complaint, then the insurer doesn't have a duty to defend unless it has knowledge from other sources. Well, in this case, by the time this matter was before the district court on the coverage issue, it was in the complaint because it was there by way of the supplemental complaint, which clearly alleged property damage. And even though Selective says, well, the court in the underlying case should not have allowed a supplemental complaint, the fact is that it did, and that was the place, if you're going to challenge that, to challenge it not by collateral attack in this case, but in that case. It was a pleading that was before the court, it was a pleading that reflected property damage, and there were other discovery materials before the district court that reflected property damage. All that was properly considered under the North Carolina rule. And so, there was really no good basis for contending that there was not coverage. The court, the district court, did stay all proceedings on damages reserved for later decision. That issue, once this court is finished with the case, however it determines the jurisdictional issue, they'll go back to the district court for determination of that. Selective, however it interprets Judge Britt's ruling in terms of its perspective due to it being, it did not defend, and so that will be an issue before Judge Britt when we go back, and we will seek to recover both our retrospective defense costs plus defense costs that are now retrospective but that were prospective at the time Judge Britt made his ruling. Counsel did not argue the issue about our attorney's fees and rates charged, so unless the court has questions about that, I'll rely on what we said in our brief. They also, counsel also did not argue about the unfair trade practice claim. That's based on the fact that Selective clearly failed to respond to the tender that they had met receiving for a year, approximately a year, and they finally did it when we submitted a, when our client submitted a counterclaim for coverage under the additional insured provision, and finally they came in and said, well we don't have coverage, but it took them a year to do that. The North Carolina law is clear, fair trade practice, claims practice statute is clear that they had a duty to promptly notify our client of what their position was on that tender. Whether we agree with it or not, we are entitled to know what it was. It took over a year to do that. There's no North Carolina case on this, but we cited two New York cases in the brief that said one of the reasons for the requirement of prompt notice by the insurance carrier is so that the insured can determine, plan their defense, plan what they're going to do, plan for their protection. If they don't know what position the insurance company is going to take, then they're deprived of that. In the New York cases, they held delays as short as I think it was 42 days as being a fair trade practice violation of the statute. He's saying that it's inextricably intertwined. What's your position on that? It's not. The claims are different to determine the duty to defend. It is necessary to look to what the allegations were and whether there were claims that could be interpreted as property damage claims. On the unfair trade practice claim, the claim is the length of the delay by the carrier in stating their position and explaining their position. Those are two completely different issues regardless of the outcome of the duty to defend issue. We have a claim for unfair trade practice for the delay in providing notice of what their position was. In the Rucks v. Republican of Sudan case, the Fourth Circuit said if we don't need to decide it in order to decide the appealable issue or if it's not inextricably intertwined as it is up here, then we don't take up the other issue. We just take up the one that's appealed. In the Church Mutual Insurance Company case, which is a Tenth Circuit case, 657 Federal Appendix 747, which is one of the cases dealing with whether an order for duty of defense is appealable. The court in that case, because there was an order directing them to pay ongoing defense costs, held that issue was appealable but held that the bad faith claim that was also asserted was not inextricably intertwined with the duty to defend and therefore was not appealable. That's a Tenth Circuit case, John. So short answer is we don't think it's intertwined. It's two different issues. And we think regardless of what this court decides on jurisdiction as to duty to defend, that issue is not properly before the court. If it is properly before the court, the evidence is clear that there was a year's delay in the face of the North Carolina statute that requires prompt notice of the insurance company's position and a clear explanation of the basis for their decision. That was not met. Judge Britt, we think, could have decided as a matter of law to establish an unfair trade practice. He said, well, I think there's an issue of fact to go to the jury about whether that's too long. And since we don't think that's appealable, we have not raised it in front of the court, but we think it's clearly not something that was reversible error. It was the right decision. We think he was too generous to select it, but that issue is for another day. Or if this court reaches it, that's why it should be affirmed. On the issue of the overall jurisdiction on duty to defend, we did not oppose jurisdiction in the brief. We understand that's not binding on the court. Jurisdiction is jurisdictional. But we would love for this court to decide the case on the merits so we go back and all we have to do is resolve damages before Judge Britt. My client's been out of pocket for a long time on the fees that expel on this case. We'd love to get it decided. We understand the court's concern. The judge clearly found that there was a duty to defend. I think he would have anticipated that selective would then come in and actually provide a defense, which it did not. He did not use the words that are in some of the cases. We're relying on the court to determine how that affects your jurisdiction. I'll be happy to answer any questions that the court has. My colleague on the other side mentioned a negligence claim. There is no negligence claim involving the general contractor. I'm looking at Joint Appendix 350. The third claim for relief, which is negligence, that's against other defendants. The only cause of action that will be implicated here and that they rely on is the breach of contract action. That's not the same as a negligence action that is raising property damage. There was also a claim about whether or not we could have opposed the supplemental complaint. Selective was not a party to that litigation, so no 12B6 would have been possible for it to raise in the underlying case. My colleague on the other side also talked about the scope of the information available to the insurer when you're looking at the duty of defense. I don't think the court necessarily has to wrestle with the scope in order to get to a reversal here. The reason for is you're looking, again, post-Harleysville. You're looking at the gravamen of the claim. You're looking at the essence of the claim. You're stripping it from everything else and you're looking at what is the thrust of the claim that they are claiming implicates coverage. Here, the thrust of the claim is economic damages implicating the performance bond. Surely the gravamen of the claim doesn't mean we ignore the particulars. There may be one overarching theory, but if one of the particulars implicates the plumbing, then we would have to consider that, right? An implication alone is not enough. Again, you're looking at the damages sought were for economic damages, were for repairing and replacing. For example, the supplemental complaint talks of the catalog of issues that may warrant additional factual pleading. It then says that the cause of the discharge, which you pointed out earlier, Judge Rushing, should be investigated and corrected. That corrected isn't a talk about the property damage. It's investigating and figuring out and bringing it back up to the quality that they anticipated, which, again, implicates the performance bond. It's not implicating the CGL policy. One of the cases that we cited in our brief was Hartford v. Gelshenin. That was a case involving North Carolina attorneys that were sending out mailers to individuals involved in accidents in North Carolina. The class action implicated a privacy act claim. There was also a North Carolina common law privacy that the same set of facts could have alleged. It could have alleged either a statutory claim or a common law claim. The court there, which was the Western District of North Carolina in 2019, said that, I hear you that the facts may have fallen under a statutory or common law, but they didn't assert the common law claim, the covered common law claim. They asserted the statutory uncovered claim. That's the same thing here. The assertion here was for economic damages on the performance bond, the problems with the PT cable tension systems, the building envelope, the fact that they didn't complete construction on time. That is the gravamen of this claim, and that doesn't implicate the duty of defense. Insurance, as the North Carolina Supreme Court in 1991 said, that insurance policies aren't performance bonds. They're covering a different type of risk. The fact that Weaver Cook wanted to, could they have pled into coverage? Absolutely. Weaver Cook most certainly, or the developer against Weaver Cook, could have pled a general negligence claim, a general construction defect claim, and we wouldn't be here today. They didn't. They instead pleaded in order to get to that performance bond because perhaps that's what they thought was the quickest avenue to get the project back on track, but that's a different case. Judges, I would just end with the implications aren't enough. There was no property damage claim that was made here. There was no damages for property damage that was sought from an occurrence in this case. It's simply an economic damages claim, and therefore the court should reverse. Happy to answer any other questions the court may have. Thank you. We'll come down to Greek Council and proceed to the next case.
judges: Allison J. Rushing, DeAndrea Gist Benjamin, Barbara Milano Keenan